UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
TWIN HILLS HOLDINGS, LLC,

                              Plaintiff,                           **MEMORANDUM & ORDER**

              - against -                                          21-CV-3507 (PKC) (SJB)

THOMAS O. FURLING, e3 HOLDING AG,
e3 AG, and SILICONE MOUNTAINS,
GMBH,

                              Defendants.
-------------------------------------------------------x
PAMELA K. CHEN, United States District Judge:

 Plaintiff Twin Hills Holdings, LLC, brings this diversity lawsuit against Defendants e3

Holding, e3 AG, Silicone Mountains GmbH ("SMG"), and Thomas Fürling for breach of contract,

fraud, breach of fiduciary duty, and other causes of action related to its investment in SMG.

Presently before the Court is Defendants' motion to dismiss the complaint, pursuant to Rules

12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure, for lack of personal jurisdiction,

and under the rule of *forum non conveniens*.  For the reasons stated herein, Defendants' motion is

granted.

## BACKGROUND

**I.** **Facts[1]**

 **A.** **The Parties and the Origin of their Relationship**

 Plaintiff is a limited liability corporation organized under the laws of Delaware, with its

principal place of business in Alabama.  (Am. Compl., Dkt. 46, at ¶ 6.)  Garry Crowder is Plaintiff's

CEO.  (*See id.* ¶¶ 10, 17.)

---

[1] The Court only recounts those facts necessary to resolve this motion.  The facts set forth
herein are drawn from Plaintiff's Amended Complaint.

Defendants e3 Holding, e3 AG, and SMG are companies organized under the laws of Switzerland with their principal places of business in Switzerland. (*Id.* ¶ 7.) Defendant Thomas Fürling is a resident of Switzerland, and serves in an undefined role with respect to e3 Holding and e3 AG. (*Id.*)[2] Prior to July 2019, SMG was a research company that was affiliated with Defendant e3 Holding. (*Id.* ¶ 19.)[3]

The parties in this case first crossed paths around February 2018, as Plaintiff recruited companies to help address cybersecurity attacks on the University of Alabama at Birmingham's ("UAB") School of Medicine. (*Id.* ¶ 10.) Between July and October 2018, a team consisting of Plaintiff, Defendants e3 Holding and e3 AG, and two other technology consulting firms engaged in a scoping exercise to assess UAB's cybersecurity vulnerabilities and strengths. (*Id* ¶¶ 12–14.) Plaintiffs allege that during the scoping exercise for the UAB project, Fürling knowingly made various false and misleading statements to Crowder at a restaurant in Birmingham, Alabama, regarding e3 Holding's capabilities, connections, and assets, specifically in connection to Centraya, e3 Holding's encryption product. (*Id.* ¶¶ 16–17.)

## B.    SMG Appraisal and Investment

In approximately July 2019, after the UAB scoping exercise concluded, Plaintiff, Defendants e3 Holding and e3 AG, and one of the technology consulting firms originally involved

---

[2] Plaintiff alleges that Fürling "dominates both e3 entities and operates them as personal tools to further his fraud." (Am. Compl., Dkt. 46, at ¶ 7.) This is an unhelpful factual allegation, especially given that Plaintiff never alleges Fürling's official position in these companies. As part of Defendants' motion papers, Fürling submits an affidavit that he is the Chief Executive Officer of e3 Holding. (Fürling Affidavit, Dkt. 75, ¶ 2; *see also* Defs. Mem., Dkt. 73, at 10.) For purposes of this motion, it does not matter what Fürling's exact position is with respect to e3 AG or e3 Holding.

[3] Plaintiff's Complaint once again fails to furnish sufficient information as to the relationship between SMG and Defendants e3 Holding, e3 AG, and Fürling before Plaintiff's investment in SMG. However, it is unnecessary for the sake of this motion to determine the exact corporate relationship between SMG and Defendants e3 Holding and e3 AG.

in the UAB scoping project—FORRS—reached an agreement pursuant to which Plaintiff and FORRS would each purchase a 33% interest in SMG.  (*Id*. ¶ 19.)  This investment would help SMG develop and distribute a "cloud-based encryption platform and data analytic products." (*Id*.) Plaintiff, FORSS, and e3 Holding also agreed to divide responsibilities and contributions to the development and distribution of the cloud-based encryption platform and data analytic products. (*Id*. ¶ 20.)

Sometime thereafter, the parties agreed to eliminate FORRS's role and any interest it would retain in the investment.  (*Id.* ¶ 22.)  Plaintiff alleges Fürling represented to Plaintiff that e3 Holding would be able to assume FORRS's responsibilities under the agreement to oversee data management.  (*Id*. ¶¶ 22–23.)

In or about November 2019, Fürling hired Crown Value, LLC ("Crown Value") to appraise SMG.  (*Id*. ¶ 24.)  Crown Value is located in Brooklyn, New York, and its "managing member" is Chaim Borevitz.  (*Id.*)  Borevitz prepared the appraisal report (the "Borevitz Report") from Crown Value's New York City office.  (*Id*.)

In December 2019, Borevitz conducted telephone and video conferences with Fürling, during which Fürling transmitted "extensive information and documents" to Borevitz while Borevitz was working from his office in New York City.  (*Id*. ¶ 25.)  During these conversations, Fürling "repeated and defended" the alleged misrepresentations about the value and capabilities of Centraya.  (*Id*.)  Additionally, as part of the valuation process of SMG for the Borevitz Report, either Crown Value or its affiliate Abrams Valuation Group conducted virtual interviews of Fürling and "other members of e3 Holding and e3 AG."  (*Id*. ¶ 27.)  During these interviews, Fürling restated the alleged misrepresentations and omissions regarding e3 and SMG's value.  (*Id*.)

In January 2020, Plaintiff wired 26,660 in Swiss Francs (approximately $28,000 USD) from its bank located in Birmingham, Alabama to e3 Holding's bank in Switzerland. (*Id.* ¶ 26.) In exchange, Plaintiff received a 33% interest in SMG. (*Id.*) Plaintiff alleges that it wired this money based on the alleged misrepresentations Fürling made directly to Crowder regarding e3 Holding and SMG's value in Birmingham in August 2018, and misrepresentations Fürling allegedly repeated to Borevitz about the same in December 2019 in New York. (*Id.*) Plaintiff alleges that it incurred significant expenditures because of Defendants' alleged misrepresentations, including more than $800,000 in development expenses, $350,000 in travel expenses, and $55,000 in operational expenses, based on its reliance on Fürling's representations. (*Id.* ¶ 29.)[4]

## II.     Procedural History

Plaintiff initiated this lawsuit against Defendant e3 Holding AG on September 8, 2020, in the Northern District of Alabama. (Compl., Dkt. 1.) On March 1, 2021, e3 Holding filed a motion to dismiss based on lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), and failure of service under Rules 12(b)(4) and 12(b)(5). (Dkt. 10.) In response to the motion, Plaintiff filed a motion for jurisdictional discovery on April 13, 2021, in order to determine "the business structures of the 'e3 family of companies' and each of their contacts with [Plaintiff] and Alabama." (Dkt. 21, at 5.) Thereafter, e3 Holding filed "supplemental motions to dismiss"

---

[4] Elsewhere in the Amended Complaint, Plaintiff alleges that Fürling "retained" Abrams Valuation Group. (*See* Am. Compl., Dkt. 46, ¶¶ 4, 24.) There are certain logical gaps in Plaintiff's allegations surrounding the Borevitz Report, which was issued on April 13, 2020, and allegedly stated that "the value of a 100% controlling interest in SMG was $301,000,000." (*Id.* ¶ 28.) Against this backdrop, it is hard to understand how a $28,000 investment enabled Plaintiff to secure a 33% stake in SMG. Moreover, Plaintiff's investment occurred in January 2020, three months before the parties received a valuation of SMG. (*Id.* ¶ 26.) Finally, Plaintiff does not explain the connection between the Borevitz Report's valuation of SMG and the harm that it allegedly suffered. Although these gaps did not impact the Court's jurisdictional analysis, they raise the question of whether Plaintiff's allegations were sufficient to state a claim even if the Court could assert personal jurisdiction over Defendants.

on April 20, 2021, and May 5, 2021.  (Dkts. 27, 30.)  On May 27, 2021, the District Court for the Northern District of Alabama held a hearing regarding these motions.  (5/27/2021 Minute Entry (noting proceedings held before Judge Madeline Hughes Haikala).)  On June 22, 2021, this case was transferred to this District.  (Order Transferring Case, Dkt. 39.)[5]

Plaintiff filed its Amended Complaint on July 30, 2021, adding Fürling, e3 AG, and SMG as defendants in the case.  (*See* Am. Compl., Dkt. 46.)  The Amended Complaint did not add or drop any causes of action.  (*Compare* Compl., Dkt. 1 *with* Am. Compl., Dkt. 46.)  Defendants timely filed a pre-motion conference ("PMC") letter on February 11, 2022, previewing the present motion to dismiss.  (Defs. PMC Letter, Dkt. 63.)  Pursuant to the briefing schedule set by the Court, the parties completed briefing of this motion to dismiss on May 6, 2022.  (*See* Defendants' Memorandum in Support of Motion to Dismiss ("Defs. Mem."), Dkt. 73; Plaintiff's Memorandum in Opposition ("Pl. Opp."), Dkt. 74; Defendants' Reply Memorandum in Support ("Defs. Reply"), Dkt. 76.)

## LEGAL STANDARDS

"On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant."  *Metro. Life Ins. Co. v. Robertson Ceco-Corp.*, 84 F.3d 560, 566 (2d Cir. 1996) (citing *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994)).  Courts assume the complaint's allegations to be

---

[5] The Court notes that in the order transferring this action ("Transfer Order"), United States District Judge Haikala found that "there is no evidence that [Defendant] e3 Holding had sufficient contacts with the State of Alabama in conjunction with the 2019 [SMG] venture" for that court to exercise personal jurisdiction, while observing, "[t]hat is not so with respect to New York."  (Dkt. 39, at 4.)  However, the Transfer Order did not include an analysis of New York's long-arm statutes or the contacts that Defendants had with New York, and Judge Haikala's decision to transfer was ultimately based on venue.  (*Id.* (citing 28 U.S.C. § 1406))  Therefore, the Court construes the statement in the Transfer Order about Defendants' contacts with New York as dicta.

true when deciding a Rule 12(b)(2) motion. *See MacDermid, Inc. v. Deiter*, 702 F.3d 725, 728 (2d Cir. 2012). If "no discovery has occurred, a plaintiff can withstand a motion to dismiss on the basis of legally sufficient factual allegations of jurisdiction in the complaint." *Thorsen v. Sons of Norway*, 996 F. Supp. 2d 143, 152 (E.D.N.Y. 2014) (citation omitted). However, a plaintiff "may not rely on conclusory statements without any supporting facts, as such allegations would 'lack the factual specificity necessary to confer jurisdiction.'" *Art Assure Ltd., LLC v. Artmentum GmbH*, No. 14-CV-3756 (LGS), 2014 WL 5757545, at *2 (S.D.N.Y. Nov. 4, 2014) (quoting *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 185 (2d Cir. 1998)).

## DISCUSSION

Defendants raise three grounds for dismissal of this lawsuit: (1) the Court's lack of personal jurisdiction over Defendants; (2) the forum selection clause; and (3) *forum non conveniens*. The Court finds that it lacks personal jurisdiction, and therefore does not address the remaining grounds for dismissal.

## I.     Personal Jurisdiction

"Personal jurisdiction of a non-domiciliary in a federal diversity case is determined by the law of the forum state in which the federal court is sitting." *Thorsen*, 996 F. Supp. 2d at 152 (citing *Whitaker v. Am. Tel., Inc.*, 261 F.3d 196, 208 (2d Cir. 2001)). New York law authorizes a court to exercise personal jurisdiction over a non-resident defendant based on either general or specific jurisdiction. *See AVRA Surgical Robotics, Inc. v. Gombert*, 41 F. Supp. 3d 350, 358 (S.D.N.Y. 2014) (citing cases). Accordingly, the Court must look to New York's long-arm jurisdictional statutes for general and specific jurisdiction—N.Y. C.P.L.R. §§ 301, 302 (McKinney, 2023), respectively—to determine whether it has jurisdiction over Defendants.

A.     **General Jurisdiction**[6]

A federal court located in New York in a federal diversity case has general personal jurisdiction over a party pursuant to N.Y. C.P.L.R. § 301 ("Section 301") where the defendant "engaged in such a continuous and systematic course of 'doing business' in New York to warrant a finding of its 'presence' in the state." *Thorsen*, 996 F. Supp. 2d at 152–53 (quoting *Jazini*, 148 F.3d at 184).   Under New York law, a defendant has been "doing business" in New York, if the court can determine "from the facts that the [defendant] is present in the State not occasionally or casually, but with a fair measure of permanence and continuity." *Duravest, Inc. v. Viscardi, A.G.*, 581 F. Supp. 2d 628, 633 (S.D.N.Y. 2008) (citing *Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.*, 565 N.E.2d 488, 488 (N.Y. 1990)).   When considering whether a defendant has been "doing business" in New York, courts often look to a nonexclusive number of factors, none of which is conclusive, including: (1) "the existence of an office in New York"; (2) "the solicitation of business in the state"; (3) "the presence of bank accounts and other property in the state"; and (4) "the presence of employees of the foreign defendant in the state." *Thorsen*, 996 F. Supp. 2d at 153 (citing *Hoffritz for Cutlery, Inc. v. Amajac. Ltd.*, 763 F.2d 55, 58 (2d Cir. 1985)).

The Court agrees with Defendants that it lacks general jurisdiction over them.  Plaintiff has not alleged that Defendants maintain an office in New York, or that any of their employees are stationed in New York.  There is also no indication in the Amended Complaint that Defendants have solicited business in New York or that they have opened any bank accounts or own any real property in New York.  Plaintiff has also conceded that "Defendants did not physically appear in

---

[6] Plaintiffs have not argued that the Court has general personal jurisdiction over the Defendants under Section 301 (*see* Pl. Opp., Dkt. 74, at 9–14), and have therefore waived that argument.  Yet, because Defendants have moved for dismissal on that basis, the Court nevertheless conducts a Section 301 jurisdictional analysis.

New York." (*See* Pl. Opp., Dkt. 74, at 13).  Therefore, Section 301 does not provide the Court a basis for general personal jurisdiction over Defendants.

**B.      Specific Jurisdiction**

Plaintiff asserts that the Court has specific jurisdiction over Defendants because: (1) its claims arise from Defendants' business transactions in New York, pursuant to N.Y. C.P.L.R. § 302(a)(1) ("Section 302(a)(1)"); (2) Defendants committed a tortious act within New York, pursuant to N.Y. C.P.L.R. § 302(a)(2) ("Section 302(a)(2)"); and (3) Defendants committed a tortious act outside of New York that caused injury to person or property within New York, such that Defendants expect or should reasonably expect to have consequences in the state, pursuant to N.Y. C.P.L.R. § 302(a)(3)(ii) ("Section 302(a)(3)(ii)").  (*See* Pl. Opp., Dkt. 74, at 11.)  As explained below, the Court disagrees on each of these grounds.

1.      Section 302(a)(1)

Under New York law, a "defendant transacts business in New York if it has 'purposefully availed itself of the privilege of conducting activities within New York and thereby invoked the benefits and protections of its law.'"  *Stroud v. Tyson Foods, Inc.*, 91 F. Supp. 3d 381, 389 (E.D.N.Y. 2015 (quoting *D.H. Blair & Co., Inc. v. Gottdiener*, 426 F.3d 95, 104 (2d Cir. 2006)). "Telephone calls and other communications to New York, standing on their own do not necessarily confer jurisdiction."  *Thorsen*, 996 F. Supp. 2d at 155 (citing *Carlson v. Cuevas*, 932 F. Supp. 76, 78–79 (S.D.N.Y. 1996)).  Contact through electronic communications "only provide a basis for asserting personal jurisdiction over non-resident defendants" if those contacts were used by defendants to project themselves into New York in such a manner that they "purposefully availed [themselves] of the privilege of conducting activities in New York."  *Id.* (quoting *Parke-Bernet Galleries v. Franklyn*, 256 N.E.2d 506, 508–09 (N.Y. 1970) (citations and quotations omitted)). Indeed, courts must examine the "nature and quality of the New York contacts . . . to determine

8

their significance." *Kahn Lucas Lancaster Inc. v. Lark Int'l Ltd.*, 956 F. Supp. 1131, 1135 (S.D.N.Y. 1997) (citations omitted); *see also Doe v. Nat'l Conference of Bar Examiners*, No. 16-CV-264 (PKC), 2017 WL 74715, at *4 (E.D.N.Y. Jan. 6, 2017) ("It is not the quantity but the quality of the contacts that matter under New York's long-arm jurisdictional analysis.") (cleaned up).

Plaintiff's argument for personal jurisdiction pursuant to Section 301(a)(2) rests entirely on the fact that Defendant Fürling hired a third-party vendor located in New York (Crown Value/Abrams Valuation Group) to produce a valuation report of SMG, in connection with this investment and that he allegedly transmitted misleading information to that vendor. Some courts have recognized that hiring a vendor located in New York can be evidence of a defendant "transacting business" in New York, when combined with other indicators of that defendant purposefully availing itself of New York. *See, e.g.*, *GTFM, Inc. v. Int'l Basic Source, Inc.*, No. 01-CIV-6203 (RWS), 2002 WL 31050840, at *4 (S.D.N.Y. 2002) (finding that defendant "transacted business" in New York by "purchas[ing] at least [] $7,000 worth of goods from at least three vendors and [selling approximately] $10,000 worth of goods to at least five customers" in the state, "attend[ing] an annual trade show in New York City," and printing a promotional brochure in New York); *cf. Blockchanges Ventures | GP, LLC v. Blockchange, Inc.*, No. 20-CIV-6866 (AKH), 2021 WL 308277, at *1 (S.D.N.Y. Jan. 29, 2021) (holding that defendant retaining a New York corporation as a "third-party vendor to collect and share information with [d]efendant about its customers" and accessibility of defendant's website from New York were insufficient to find that defendant "transacted business" for purposes of Section 302(a)(1)). However, Plaintiff has not identified any decisions holding that the hiring of a New York-based vendor can be the

entire basis of specific jurisdiction under Section 302(a)(1), and the Court is unaware of any such authorities.

None of the cases relied on by Plaintiff with respect to Section 302(a)(1) support an exercise of personal jurisdiction under that provision here.  For example, this Court held in *Thorsen* that the organizational defendant's officers "transacted business" within New York not only based on the fact that they "contacted via email and phone numerous New Yorkers" as part of an investigation they were conducting for defendant, but also because these officers "twice visited New York to deliver the findings of [their] investigation." *Thorsen*, 996 F. Supp. 2d at 155–56. As Defendants correctly note, the remaining cases Plaintiff cites involve far more contacts with New York than the electronic communications alleged here between Fürling and Borevitz.  (*See* Defs. Reply, Dkt. 76, at 6.)  Because Plaintiff has failed to establish that its claims against Defendants arose out of alleged in-state transactions of business,[7] the Court cannot exercise personal jurisdiction under Section 302(a)(1).

      2.    <u>Section 302(a)(2)</u>

Plaintiff further asserts that the Court may exercise personal jurisdiction over Defendants under Section 302(a)(2), which applies if a defendant "commits a tortious act within the state." N.Y. C.P.L.R. § 302(a)(1).  However, "New York law limits [Section] 302(a)(2) jurisdiction to tort claims so plaintiff cannot rely on this provision to authorize specific jurisdiction for its contract claim." *AVRA Surgical Robotics, Inc.*, 41 F. Supp. 3d at 360 (citing *Pramer S.C.A. v. Abalplus Int'l Corp.*, 907 N.Y.2d 154, 159 (N.Y. App. Div. 2010)).  Therefore, Section 302(a)(2) cannot

---

[7] Because the Court has found that Defendants have not "transacted business" within New York, it need not consider whether Plaintiff's allegations have satisfied the "arising from" prong of Section 302(a)(1).  *See Doe*, 2017 WL 74715, at *10 (analyzing Plaintiff's failure to meet the "arising from" prong of Section 302(a)(1) only in the context of "accepting, for the sake of argument, Plaintiff's contention the Defendant [had] transacted business" in New York").

provide a basis for personal jurisdiction for either Plaintiff's breach of contract or quasi-contract quantum meruit claim. *See Madison Capital Markets, LLC v. Starneth Europe B.V.*, No. 15-CIV-7213 (RWS), 2016 WL 4484251, at *5 n.2 (S.D.N.Y. Aug. 23, 2016) (explaining that Section 302(a)(3) cannot provide a basis for jurisdiction for quasi-contract claims).

Plaintiff also cannot rely on Section 302(a)(2) for its tort claims. Plaintiff argues that Defendants' "tortious behavior includ[ed] making numerous false statements in New York to persuade Plaintiff to invest." (*See* Pl. Opp., Dkt. 74, at 11.) Yet, "[t]he New York Court of Appeals has construed this provision [*i.e.*, Section 302(a)(2)] to require that the defendant was physically present in New York when he committed the tort." *AVRA Surgical Robotics, Inc.*, 41 F. Supp. 3d at 360 (citing *Bensusan Rest. Corp. v. King*, 126 F.3d 25, 28 (2d Cir. 1997) (citing *Feathers v. McLucas*, 15 N.Y.2d 443, 458 (N.Y. 1980)). Accordingly, federal courts in New York have routinely found that they do not have jurisdiction under Section 302(a)(2) if there is no allegation that defendant was present in New York when committing the allegedly tortious act. *See, e.g.*, *Villanova v. Harbilas*, No. 08-CIV-10448 (PKC) (RLE), 2010 WL 1640187, at *4 (S.D.N.Y. April 13, 2010) (finding because "plaintiff has not alleged the defendant was in New York when he committed any allegedly tortious act . . . the defendant is not subject to personal jurisdiction in New York pursuant to section 302(a)(2)"). As Plaintiff has conceded that "Defendants did not physically appear in New York" (*see* Pl. Opp., Dkt. 74, at 13), the Court cannot exercise personal jurisdiction over Defendants under Section 302(a)(2).

3.    Section 302(a)(3)

Finally, Plaintiff argues that the Court has specific jurisdiction over his tort claims of misappropriation, breach of fiduciary duty, and fraud pursuant to Section 302(a)(3)(ii). (*See* Pl.

Opp., Dkt. 74, at 11.)[8]  Section 302(a)(3)(ii) applies when a defendant "commits a tortious act [from outside] the state causing injury to person or property within the state" such that the defendant "expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce[.]"   N.Y. C.P.L.R. § 302(a)(3)(ii).

Under Second Circuit precedent, "courts determining whether there is injury in New York sufficient to warrant [Section] 302(a)(3) jurisdiction must generally apply a situs-of-injury test, which asks them to locate the original event which caused the injury."  *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 792 (2d Cir. 1999) (citations and internal quotation marks omitted).  Where a party invokes Section 302(a)(3)(ii) as the basis for jurisdiction for a tort claim, "[t]he situs of injury . . . is the place where the underlying, original event occurred which caused the injury[.]"  *M&M Packaging Inc. v. Kole*, 298 F. App'x 39, 42 (2d Cir. 2008) (internal quotation marks, emphasis, and citation omitted); *see also Bank Brussels*, 171 F.3d at 792 ("In the case of fraud or breach of fiduciary duty committed in another state, the critical question is [] where the first effect of the tort was located that ultimately produced the final economic injury.").

The Court finds that Section 302(a)(3)(ii) cannot confer jurisdiction here because Plaintiff has failed to establish New York as the situs of the injury.  Plaintiff argues that Defendants engaged in "tortious behavior via calls, email or communicating over the internet."  (Pl. Opp., Dkt. 74, 13.) The only case Plaintiff cites for personal jurisdiction pursuant to Section 302(a)(3)(ii)—*Park W.*

---

[8] Section "302(a)(3), like § 302(a)(2) is expressly limited to tortious conduct," and therefore cannot confer jurisdiction over [a] plaintiff's breach of contract claim."  *See AVRA Surgical Robotics, Inc.*, 41 F. Supp. 3d at 361.  Nor can Section 302(a)(3) confer jurisdiction on Plaintiff's quantum meruit claim.  *See Madison Capital Markets, LLC*, 2016 WL 4484251, at *5 n.2 (explaining that Section 302(a)(3) cannot provide a basis for jurisdiction for quasi-contract claims).

*Galleries, Inc. v. Franks*—is inapposite.  The district court in that case found that the plaintiff's allegations that the defendant had "induced breaches [of contract], via [defendant's] telephone calls and email to [p]laintiff's New York customers, costing [p]laintiff numerous sales and customers in New York" were sufficient to allege an injury "within" New York State under Section 302(a)(3)(ii).  *Park W. Galleries*, No. 12-CIV-3007 (CM), 2012 WL 2367040, at *4 (S.D.N.Y. June 20, 2012).  But here, Plaintiffs do not allege that Defendants made tortious communications to Plaintiff's customers in New York.[9]  Rather, the only individual or entity that Defendants allegedly contacted in New York was their own third-party vendor, Crown Value and its principal, Borevitz.

Plaintiff further contends that because Defendant Fürling allegedly "communicated to Borevitz [who is located] in New York for the purposes of causing Borevitz to draft a misleading valuation report" that Defendants engaged in tortious conduct that caused injury in New York.  (*See* Pl. Opp., Dkt. 74, at 13–14.)  However, in *Bank Brussels*, the Second Circuit clearly explained that the "situs of injury" for fraud or breach of fiduciary duty claims is not where the wrongful conduct occurred.  *See Bank Brussels*, 171 F.3d at 792.  Instead, the appellate panel found that the situs of the injury is where plaintiff "first disbursed its funds" into an investment in reliance on the defendant's alleged omissions, because "this disbursement was the first step in the process that generated the ultimate economic loss" to Plaintiff.  *Id.*  Here, Plaintiff's Amended Complaint states unequivocally that it "wired approximately $28,000 USD from [its bank] located in Birmingham,

---

[9] In fact, Plaintiff has not alleged that it conducts any business or has any customers in New York.  (*See generally*, Am. Compl., Dkt. 46.)  At one point in its motion papers, Plaintiff suggests that Crown Value and Borevitz were "Plaintiff's representative in this forum."  (*See* Pl. Opp., Dkt. 74, at 11.)  But Plaintiff's pleadings do not contain any factual allegations indicating that Crown Value or Borevitz were Plaintiff's agent.  In fact, Plaintiff alleges that Defendant "Fürling hired Crown Value LLC to appraise SMG," which would contradict Plaintiff's late-breaking, revisionist suggestion that Crown Value and/or Borevitz were its business representatives.

Alabama to e3 Holding's bank in Switzerland." (Am. Compl., Dkt. 46, ¶ 26.)  As such, the situs of injury is not New York, and the Court cannot exercise personal jurisdiction over Defendants under Section 302(a)(3)(ii).

## CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss for lack of personal jurisdiction is granted.  The Clerk of Court is respectfully directed to enter judgment accordingly and terminate this action.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: March 31, 2023
      Brooklyn, New York